**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| HOSEA ANTHONY GREGORY, | : | |
| | : | Civil Action |
| Petitioner, | : | 06-4008 (SDW) |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| B.I.C.E./D.H.S. et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

> HOSEA ANTHONY GREGORY, Petitioner pro se
> #18-192-715
> Middlesex County Adult Correctional Center
> New Brunswick, New Jersey 08903

**SUSAN D. WIGENTON, District Judge**

On August 23, 2006, Petitioner HOSEA ANTHONY GREGORY (hereinafter "Petitioner"), currently confined at the Middlesex County Adult Correctional Center, New Brunswick, New Jersey, filed an application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.

Petitioner, a felon convicted to serve a term of imprisonment, see Pet.§ 12, is a native of the United Kingdom, who spent six years of his life in Jamaica prior to his arrival to the United States. See id. §§ 9, 11. Petitioner was eventually released on parole but, following his parole violation, was placed back in

custody for the remainder of his term, and a detainer was lodged against him.  See id. § 13.  Petitioner, therefore, became subject to removal under the order issued by an immigration judge in the vicinage subject to the jurisdiction of the United States Court of Appeals for the Second Circuit.  See id.  Petitioner now requests release from incarceration and, as it appears, revocation of Petitioner's order of removal.[1]  See id. § 14.  Petitioner asserts that he is entitled to such relief since: (a) Petitioner is suffering from a terminal illness;[2] and (b) Petitioner's "presumptive removal period" had expired.[3]  See id. § 14.

---

[1] Petitioner appears to indicate so by stating that "[P]etitioner is seeking a[n] opportunity to spend the rest of his time that he has left on this [E]arth with his love[d] ones."  Pet. § 14.

[2] Petitioner asserts that his "medical status . . . was reveale[ed] to [P]etitioner [indicating a desease] of . . . which [he] is going down.  It was found that . . . [P]etitioner is in high risk regarding his blood pressure [and] Petitioner was diagnosed with having a rare case of Leukemia, which is very life threatening. . . . [P]etitioner has not revealed . . . this information . . . , because being incarcerated is bad enough but to release this information [to the members of Petitioner's family] would surely finish them."  Pet. § 14.

[3] Petitioner also appears to be under the impression that he "could have completed his term [with respect to the underlying offense] earlier but[,] due to the . . . detainer lodged against him, [Petitioner has to] prolong[] his incarceration."  Pet. § 13. Petitioner appears to be misinformed about the nature of detainer since a detainer is an instrument that can neither shorten nor prolong one's incarceration: a detainer merely puts the prison officials on notice that, upon the inmate's release from confinement based on the underlying offense (regardless of whether such release is a result of the inmate's completion of his term or

**STANDARD OF REVIEW**

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3). That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**DISCUSSION**

It appears to this Court that Petitioner interrelates the matters of removal, incarceration in anticipation of removal, and those of confinement of inmates with terminal illnesses. See generally, Pet. If so, Petitioner errs.

---

the inmate's parole), the inmate should be transferred to the custody of immigration officials for the purposes of removal. See, e.g., Torres v. INS, 2003 U.S. Dist. LEXIS 13276 (D. Conn. July 30, 2003).

**A.    Matters of Removal**

First, Petitioner asks this Court to reverse Petitioner's order of removal.  See Pet. § 14.  This Court has no such power.

On May 11, 2005, the President signed into law the REAL ID Act of 2005.  See Pub. L. 109-13, Div. B, 119 Stat. 231 (May 11, 2005). Section 106(a)(5) of the REAL ID Act of 2005 amends 8 U.S.C. § 1252 to provide that, "[n]otwithstanding any other provision of law (statutory or non[-]statutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision . . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act, except as provided in subsection (e)."[4] See REAL ID Act of 2005, § 106(a)(5), to be codified at 8 U.S.C. § 1252(a)(5).  Moreover, pursuant to 28 U.S.C. § 1631,

> [w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the

---

[4] Subsection (e) of § 1252 is not applicable here.  That section provides that judicial review of any determination made under 8 U.S.C. § 1225(b)(1) is available in habeas corpus proceedings, limited to a determination of whether the petitioner is an alien, whether the petitioner was ordered removed under such section, and whether the petitioner can prove certain conditions.  See 8 U.S.C. § 1252(e)(2).  Section 1225(b)(1) governs the inspection of aliens arriving in the United States and authorizes an immigration officer to order the removal of an alien who is arriving in the United States, without further hearing.  See 8 U.S.C. § 1225(b)(1).

> time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

The applicable venue provision, 8 U.S.C. § 1252(b)(2), states that a "petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings."

Since the seat of the immigration court that issued the order of removal at issue is in a vicinage subject to the jurisdiction of the United States Court of Appeals for the Second Circuit, the application for permission to seek <u>vacatur</u> Petitioner's order of removal should have been filed with the Court of Appeals for the Second Circuit.  Therefore, this Court construes Petitioner's application with respect to revocation of Petitioner's order of removal as Petitioner's application to file an appeal of his order of removal with the United States Court of Appeals for the Second Circuit and transfers this matter accordingly.

**B.    <u>Incarceration in Anticipation of Removal</u>**

Petitioner contends that his current detention is in excess of Petitioner's "presumptively reasonable period of removal."  <u>See</u> Pet.§ 15 (apparently relying on <u>Zadvydas v. Davis</u>, 533 U.S. 678, 700-701 (2001), and related cases).  Petitioner errs.

Section 1231(a)(1)(A) provides that the government has a

90-day "removal period" to remove an alien ordered removed from the United States.  Detention during the removal period under Section 1231(a)(1)(A) is mandatory and, in addition, § 1231(a)(1)(C) provides that the removal period shall be extended, and the alien may remain in detention during such extended period, if the alien "acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C).

The "removal period" starts on the latest of the following: (1) the date when the order of removal becomes administratively final (that is, appeal to BIA was either taken and ruled upon or the time to appeal expired); or (2) if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order, or (3) if the alien is detained or confined (except under an immigration process), the date the alien is released from confinement.  See 8 U.S.C. § 1231(a)(1)(B).

If--during the period of removal triggered by the then-latest of the three above-listed events applicable to a particular alien-- the alien is subjected to a qualifying superceding event, e.g., the alien released from confinement related to a criminal offense files an application seeking judicial review of the alien's removal order, or if this alien is detained/confined on a new charge or on parole revocation and then re-released, such superceding event start the alien's removal period anew.  See 8 U.S.C. §

1231(a)(1)(B).

> [There cannot] be ["]only one["] removal period[:] . . . that is the only rational reading of the statute. . . . [T]he statute provides that the removal period begins on the latest of several dates. The passing of one date does not stop the operation of the statute. In a sense, the only way to apply the statute to a given situation is retrospectively. That is, the removal period begins when the removal order becomes final. If a court issues a stay [or a new detention unrelated to removal proceedings takes place], the removal period begins [anew] when the stay is lifted [or when such new detention ends]. Therefore, the only way to determine when the removal period begins, or began, is to look at what events already have occurred. If there is another potential event, there is another potential beginning date for the removal period. The only sensible reading of this provision is that [DHS/ICE] is required to effectuate the removal within 90 days of certain events, but will have another 90 days if another one of the designated events occurs at a later date. The obvious reason for this is that [DHS/ICE]'s authority to effect the removal is suspended due to the occurrence of the later event (such as a stay order [or a new detention on criminal charges]).

Michel v. INS, 119 F. Supp. 2d 485, 498 (M.D. Pa. 2000); accord Morena v. Gonzales, 2005 U.S. Dist. LEXIS 37989, at *18 (M.D. Pa. Oct. 4, 2005); Atkinson v. INS, 2002 U.S. Dist. LEXIS 11335, at *5 (E.D. Pa. June 25, 2002); Marcelus v. INS, 2002 U.S. Dist. LEXIS 795, at *6 (E.D. Pa. Jan. 16, 2002); Dunbar v. Holmes, 2000 U.S. Dist. LEXIS 17048, at *6-7 (E.D. Pa. Nov. 28, 2000).

While, during the 90-day "removal period," the alien *must* be detained, see id. § 1231(a)(2), after the 90-day removal period, the government may further detain the alien or release him subject to conditions of release. See id. § 1231(a)(6). However, in Zadvydas, the Supreme Court held that aliens may be detained

further under § 1231(a)(6) only for "a period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689 (holding that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States [and] does not permit *indefinite* detention") (emphasis supplied). Recognizing that its holding would lead to difficult judgment calls in the courts, the Supreme Court, "for the sake of uniform administration in the federal courts" recognized a six-month "presumptively reasonable period of detention." Id. at 700-01.

In the case at bar, Petitioner's detention in connection with Petitioner's removal should be evaluated through the prism of Petitioner's recent revocation of parole and re-incarceration. Since Petitioner is currently incarcerated on the underlying charges rather than purely on the grounds that he is subject to removal, (a) Petitioner's "removal period" did not start to run (and will not start running until hi is released), see 8 U.S.C. § 1231(a)(1)(B); (b) so, Petitioner's 90-day period of mandatory detention under Section 1231(a)(1)(A) could not start running; and (c) Petitioner's six-month "presumptively reasonable period" of detention similarly could not begin to run. See Zadvydas, 533 U.S. at 700-701. *These periods will start running only when Petitioner is released from his incarceration on the underlying charges,*

*either by serving his term in entirety or by being paroled.* See Michel, 119 F. Supp. 2d at 498; Morena, 2005 U.S. Dist. LEXIS 37989, at *18; Atkinson, 2002 U.S. Dist. LEXIS 11335, at *5; Marcelus, 2002 U.S. Dist. LEXIS 795, at *6; Dunbar, 2000 U.S. Dist. LEXIS 17048, at *6-7. Therefore, Petitioner's instant application has no merit.[5]

C.  **Release due to Terminal Illness**

Since the gist of Petitioner's Petition is that Petitioner should be released from incarceration because he "was diagnosed with having a rare case of Leukemia, which is very life threatening," see Pet. § 14, it appears that Petitioner is under the impression that this Court has the power to grant Petitioner a "compassionate release." Petitioner errs.

An application for compassionate release should be made administratively to Petitioner's prison authorities.[6] While "[a]

---

[5]

Petitioner's Petition is silent as to whether he is subject to removal to the United Kingdom or to Jamaica. See generally, Pet. Petitioner's Petition is equally silent as to why his removal to either the United Kingdom or to Jamaica would not be reasonably foreseeable in the event Petitioner is released from his incarceration on the underlying charges, either by serving his term in entirety or by being paroled. See id. Petitioner is reminded that, for the purposes of Petitioner's future § 2241c applications, if any, Petitioner would have the burden of showing that such removal(s) is/are not reasonably foreseeable. See Zadvydas v. Davis, 533 U.S. 678 (2001).

[6]

Alternatively, Petitioner may move Petitioner's sentencing court for compassionate release/reduction of sentence. See, e.g.,

convicted prisoner does not have a constitutional right to be released before the expiration of a valid sentence," Wottlin v. Fleming, 136 F.3d 1032, 1037 (5th Cir. 1998), Petitioner's prison authorities have the discretion to entertain and grant Petitioner's application for a compassionate release.[7]

## CONCLUSION

Since Petitioner's application to appeal his removal order should have been filed with the Court of Appeals for the Second Circuit, Petitioner's application is transferred accordingly.

Petitioner's application contesting his current incarceration is DISMISSED WITHOUT PREJUDICE.[8]

---

Burnette v. United States, 2006 U.S. Dist. LEXIS 37104 (W.D. Va. June 6, 2006).

[7] This Court, however, notes that the fact that Petitioner's prison authorities might entertain Petitioner's application does *not* mean that the prison authorities must do so. For example, the Federal Bureau of Prison (hereinafter "BOP") has discretion in granting compassionate release to federal inmates, and the BOP's policy generally restricts compassionate release to those who have been diagnosed with medical conditions that are terminal within one year, or who suffer from severely debilitating and irreversible conditions that render them unable to provide self-care. See, e.g., Williams v. Van Buren, 2004 U.S. App. LEXIS 26456, at *3 (5th Cir. 2004). Moreover, the prison authorities are entitled to consider the fact that detainer was lodged against Petitioner. See, e.g., Hernandez-Castillo v. Bureau of Prisons, 56 Fed. Appx. 256 (6th Cir. 2003). Petitioner, thus, has to explore Petitioner's options by applying to the State prison authorities.

[8] This Court notes that, for the purposes of Petitioner's application contesting his current incarceration, a dismissal without prejudice signifies that Petitioner is free to file another

Page -10-

Petitioner's application requesting compassionate release and/or reduction of sentence is DISMISSED WITH PREJUDICE.

An appropriate order accompanies this Opinion.

                                                **s/SUSAN D. WIGENTON**
                                                **United States District Judge**

Dated: September 5, 2006

---

§ 2241 petition should, after expiration of his <u>Zadvydas</u> "presumptive period," Petitioner develop good evidence-based reason to believe that his removal is no longer reasonably foreseeable. <u>See</u> note 5, <u>supra</u>.